UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL PLUMMER,<br><br>　　　　Defendant. | Case No. 23-CR-299 (CJN) |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO MODIFY RELEASE CONDITIONS TO HOME DETENTION**

Just one month ago, this Court released Defendant Michael Plummer to home incarceration. In doing so, this Court found that the particular danger posed by the defendant's release—that he would leave his home to commit a violent offense before the Court could be alerted—was adequately countered by 24/7 home incarceration with monitoring by (i) a GPS tracking device and (ii) two third-party custodians. Citing his relatively short period of compliance—which provides evidence only that this Court's strict release conditions have so far worked to protect the community as intended—the defendant now asks this Court to upend those conditions. The defendant seeks to take a job that would require him to travel from his home in Laurel, Maryland, to Southeast Washington, D.C., daily and to travel to public schools within the District of Columbia. While the defendant's desire for employment is laudable, the defendant's proposed employment is facially inadequate to assure community safety as he appears to have been employed by the same organization at the time of the offense. The defendant identifies no new development that reduces his dangerousness such that this Court should modify his release conditions. For reasons that follow, this Court should deny the defendant's Motion and keep in place his current release conditions.

## BACKGROUND

In addition to the below, the government incorporates by reference its August 29, 2023, Memorandum in Support of Pretrial Detention (ECF No. 10); its August 31, 2023, Motion for Review of Release Order and Stay Pending Appeal (ECF No. 14); and all related attachments.

### *The Instant Offense*

On August 17, 2023, at approximately 11:05 a.m., Investigator Nunez and other members of the Metropolitan Police Department's Criminal Apprehension Unit were preparing to execute an arrest warrant in the 3500 block of 18th Street Southeast, in Washington, D.C. While sitting in his vehicle, Investigator Nunez observed an individual, later identified as Defendant Michael Plummer, park his vehicle outside 3530 18th Street Southeast. The vehicle—a black BMW X6 with Maryland license 4FF1837—is registered to the defendant. Investigator Nunez was sitting in the driver's seat of a vehicle, on the opposite side of the street from the defendant, with an unobstructed view. The defendant exited the driver's door of the vehicle and walked along the side of the vehicle to the rear. As the defendant stood at the rear of the vehicle with the vehicle's trunk open, Investigator Nunez observed a dark handgun fall to the ground at the defendant's feet. The defendant quickly retrieved it and placed it inside his shorts. No one else was observed in or around the vehicle, and no one else was by the defendant when the firearm fell to the ground.

In response, CAU members exited their vehicles, approached the defendant, detained him, and conducted a protective patdown. During the patdown, Officer Kirkland Thomas felt an object consistent with a firearm in the defendant's right pocket area. Officer Thomas asked the defendant if the gun was registered or if he had a concealed carry permit. The defendant responded, "No." As officers attempted to locate and remove the firearm from the defendant's person—concerned for their safety, as the gun had already fallen to the ground once—they asked

2

the defendant in which layer of clothing the firearm was. The defendant responded: "It's inside . . . it's inside the shorts." Officers recovered the firearm from underneath the defendant's outer shorts, inside an external pocket on the right leg of his compression shorts.[1]



*The firearm on the defendant*        *The firearm, chambered round, and loaded magazine*

The firearm was Sig Sauer P365 SAS 9mm X19, loaded with one round in the chamber and five rounds in a ten-round capacity magazine. It was also equipped with a laser sight. No firearms or ammunition are manufactured within Washington, D.C., therefore the firearm and ammunition necessarily traveled in and affected interstate commerce.

\*   \*   \*

At the time of the offense, the defendant was apparently employed by, among other

---

[1] The defense has suggested—without offering any factual support—that the defendant may have an "innocent possession" defense under *United States v. Mason*, 233 F.3d 619 (D.C. Cir. 2000). But the facts of the instant case appear remarkably similar to the hypothetical scenario under which the D.C. Circuit held an innocent possession defense would be unavailable. *See Mason*, 233 F.3d at 624 ("The firearm is accidentally discovered the next day when a police officer sees the gun fall out of the defendant's jacket pocket. In such a case, there would be no plausible innocent possession defense, because the defendant could not show transitory possession. In other words, there would be no basis whatsoever to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible. In such a case, a trial judge should reject a request for an innocent possession instruction."). Absent the discovery of new information, the government intends to move to preclude an innocent possession defense at trial.

organizations, the InnerCity Collaborative Community Development Corporation as part of the District's Safe Passage initiative.  *See* Def.'s Mot. & Mem. in Supp. of Pretrial Release (ECF No. 11) at 10 ("He is also employed by the InnerCity Collaborative Community Development Corporation and works as a Safe Passage facilitator near a number of school sites."); Def. Opp. To Gov't Appeal of Mr. Plummer's Release (ECF No. 16) at 15 ("He is also employed by the InnerCity Collaborative Community Development Corporation supporting returning citizens, and works as a Safe Passage facilitator near a number of school sites, supporting students as they travel to and from school and assisting with conflict resolution and mediation for school-age youth." (footnote omitted)).

On September 25, 2023—just two weeks after this Court released him to home confinement—the defendant requested that the InnerCity Collaborative Community Development Corporation provide him with a work schedule at a stationary job site in support of an anticipated motion to modify his release conditions.  (ECF No. 23-1).

## PROCEDURAL HISTORY

On August 18, 2023, the defendant was charged in the Superior Court of the District of Columbia, in case number 2023 CF2 005704, with one count of unlawful possession of a firearm (prior conviction) under the District of Columbia code.  The same day, the United States District Court for the District of Columbia issued a criminal complaint and arrest warrant in case number 23-MJ-217 (GMH), charging the defendant with one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

On August 21, 2023, the defendant had his initial appearance before this Court, and the Superior Court case was dismissed.  The government orally moved for the defendant's detention

pending trial, which was followed by a written memorandum. (ECF No. 10). The defendant, through counsel, filed a motion seeking his release from custody. (ECF No. 11).

On August 30, 2023, a federal grand jury returned an indictment charging the defendant with the violation of 18 U.S.C. § 922(g)(1). (ECF No. 12). The case was assigned to the Honorable Carl J. Nichols. Following the return of the indictment, the parties appeared before Magistrate Judge Faruqui for arraignment and a detention hearing. The magistrate court denied the government's motion for pretrial detention and granted the defendant's motion for release, ordering the defendant released into home confinement at the residence of his first cousin, with the defendant's cousin and fiancée serving as third-party custodians. Because the government indicated that it would appeal the order, the magistrate court stayed its order until Friday, September 1, 2023, at 5:00 p.m., to allow the government time to file its appeal.

On August 31, 2023, the government filed an Emergency Motion for Review of Release Order and Stay Pending Appeal. (ECF No. 14). In a minute order issued later that evening, this Court stayed the magistrate court's release order and ordered the defendant to respond to the government's motion by September 6, 2023.

On September 1, 2023, the magistrate court issued its minute order granting the defendant's motion for release and issued proposed release conditions. (ECF No. 15).

On September 7, 2023, the defendant filed a Defense Opposition to Government Appeal of Mr. Plummer's Release. (ECF No. 16). The next day, this Court set a bond hearing for September 11, 2023.

At the September 11, 2023, bond hearing, this Court released the defendant to GPS-based home incarceration at the residence he shares with his fiancée, with his fiancée and her mother to serve as third-party custodians. (ECF No. 19). This Court found that the particular danger posed

by the defendant's release—that he would leave his home and commit a violent offense before the Court could be alerted—was adequately countered by strict conditions under which the defendant would be confined to his residence, with 24/7 monitoring by a GPS tracking device and at least one third-party custodian—and contact limited to his immediate family, his fiancée's immediate family, and his legal team. The Court specifically noted that the defendant could use communications devices for work, allowing for the possibility of remote employment. (*See* ECF No. 19 at 5).

This Court scheduled a status hearing for Tuesday, October 10, 2023, at 10:00 a.m. Shortly before the hearing, the defendant filed a Motion to Modify Release Conditions to Home Detention. (ECF No. 23). This Court vacated the hearing so that it could consider the Motion.

The government now files this Opposition.

## **ARGUMENT**

The defendant requests a substantial modification of his release conditions, asking this Court to allow him to travel to and within the District of Columbia daily—and apparently without the supervision of his third-party custodians. These are essentially the conditions under which the defendant was able to commit the instant offense. The defendant does not identify any new development that reduces his dangerousness such that this Court should alter its assessment of the least restrictive conditions of release that will reasonably assure the safety of the community.

The defendant asks that he be permitted to travel to Southeast Washington, D.C., daily, to work for InnerCity Collaborative Community Development Corporation as part of the District's Safe Passage initiative.[2] The job would also require the defendant to travel to public schools in

---

[2] The work schedule attached to the defendant's Motion (ECF No. 23-1) shows that the defendant requested a work schedule two weeks after being released to home confinement. While the

6

the District.  But based on the defendant's prior representations to the magistrate court and this Court, as cited above, it appears that the defendant was employed by the same program at the time of the instant offense.  This employment was insufficient to prevent the defendant from carrying a loaded gun in broad daylight.  The addition of a GPS monitor—which by its nature is incapable of detecting whether the defendant is in possession of a firearm—cannot mitigate the danger posed by the defendant's release.  The magistrate court and this Court both agreed that the least restrictive conditions of release involved 24/7, GPS-based home confinement under the constant supervision of third-party custodians.  The defendant has not identified any meaningful change in circumstances that reduces his dangerousness such that this Court should alter its assessment of the least restrictive conditions of release necessary to protect the community.

The only new information the defendant cites is his compliance with his release conditions over the past month.  But the defendant's success on his current release conditions is attributable to those strict conditions and offers evidence only that the conditions are working as intended.  The defendant's compliance—over a relatively short period—provides no basis for the substantial reduction of release conditions he now seeks.  *See, e.g.*, *United States v. Henry*, 314 F. Supp. 3d 130, 133 (D.D.C. 2018) ("But compliance—even model compliance—with the Court's requirements is not enough to warrant adjustment of her pretrial release conditions.  Only if there has been a development in Ms. Henry's situation that would affect the Court's assessment of the 'least restrictive' conditions of release that 'will reasonably assure . . . the safety of any other person and the community,' 18 U.S.C. § 3142(c), could she be entitled to the adjustment that she requests.") (denying release from halfway house after approximately six months of compliance).

---

defendant's desire for employment is laudable, he has not shown that he has made any meaningful effort to obtain remote employment that would be consistent with his current release conditions.

**CONCLUSION**

A month ago, this Court released the defendant on strict conditions that it determined were the least restrictive conditions necessary to protect the community. The defendant has not offered any change in circumstances that reduces the danger posed by his release and would warrant such a substantial relaxation of his release conditions. Because the requested modification is essentially a return to the conditions under which the defendant committed the instant offense, this Court should deny his Motion.

                                              Respectfully submitted,

                                              MATTHEW M. GRAVES
                                              UNITED STATES ATTORNEY
                                              D.C. Bar No. 481052

Dated: October 11, 2023        By:     */s/ Paul V. Courtney*
                                              Paul V. Courtney
                                              D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
                                              Melissa Jackson
                                              D.C. Bar No. 996787
                                              Assistant United States Attorneys
                                              United States Attorney's Office for the
                                              District of Columbia
                                              601 D Street NW
                                              Washington, D.C. 20530
                                              (202) 252-1719 (Courtney)
                                              (202) 252-7786 (Jackson)
                                              Paul.Courtney@usdoj.gov
                                              Melissa.Jackson@usdoj.gov