UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL PLUMMER,<br><br>Defendant. | Case No. 23-CR-299 (CJN) |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

The United States of America, by and through undersigned counsel, respectfully submits this Memorandum in Opposition to Defendant's Motion to Suppress Physical Evidence and Statements. (ECF No. 57.) For reasons that follow, the defendant's threadbare motion is meritless. This Court should deny the defendant's motion as to his Fifth Amendment claim without prejudice to his refiling an adequately developed motion and should deny the motion in full on the merits without a hearing.

**FACTUAL BACKGROUND**

On August 17, 2023, at approximately 11:00 a.m., Investigator Nunez and other members of the Metropolitan Police Department's Criminal Apprehension Unit were preparing to execute an arrest warrant in the 3500 block of 18th Street SE, Washington, D.C.[1] While sitting in his police vehicle, Investigator Nunez observed an individual, later identified as Defendant Michael Plummer, park his vehicle outside 3530 18th Street SE. The vehicle—a black BMW X6 with Maryland license plate 4FF1837—was registered to the defendant. Investigator Nunez was sitting in the driver's seat of a vehicle, on the opposite side of the two-lane street from the defendant, with

---

[1] The arrest warrant being executed was unrelated to the instant matter.

an unobstructed view. Inspector Nunez saw the defendant exit the driver's door of the vehicle and walk along the side of the vehicle to the rear. As the defendant stood at the rear of the vehicle with the vehicle's trunk open, Investigator Nunez observed a dark handgun fall to the ground at the defendant's feet. The defendant quickly retrieved it and placed it inside his shorts.

In response, CAU members exited their vehicles, approached the defendant, stopped him, and conducted a protective patdown. Officer Kirkland Thomas exited his vehicle at 11:02:03 a.m. *See* Exhibit 2, BWC of Officer Thomas. Inspector Nunez exited his vehicle at 11:02:06 a.m. *See* Exhibit 1, BWC of Detective Nunez at 11:02:06.[2] The defendant was stopped at 11:02:13 a.m. At 11:02:19 a.m., as the defendant was being detained, an officer asked, "Where is it?" During the patdown, which began at 11:02:24 a.m., Officer Thomas felt an object consistent with a firearm in the defendant's right pocket area.



*Still image from Exhibit 2: the protective patdown by Officer Thomas*

---

[2] The government sent Exhibits 1-6, consisting of Body Worn Camera ("BWC") from the scene, photos taken at the scene, and an excerpt from MPD "Crime Cards," to defense counsel on February 5, 2025.

Officer Thomas asked the defendant if the gun was registered or if he had a concealed carry permit. The defendant responded, "No." *See* Exhibit 2, BWC of Officer Thomas at 11:02:28-11:02:39. As officers attempted to locate and remove the firearm from the defendant's person—concerned for their safety, as the gun had already fallen to the ground once—they asked the defendant in which layer of clothing the firearm was. Specifically, at 11:05:28 a.m., Investigator Nunez asked, "Sir, for your safety, for my safety, I don't want to grab this weapon the wrong way. It's inside the pants?" *See* Exhibit 3, BWC of Sergeant Nickerson at 11:05:28-30.



***Still Image from Exhibit 3: Investigator Nunez Recovers the Firearm***

The defendant responded: "It's inside . . . it's inside the shorts." Exhibit 2 at 11:05:35. Officers recovered the firearm from underneath the defendant's outer shorts, inside an external

pocket on the right leg of his compression shorts. *See* Exhibits 4 and 5, still photos taken by Sergeant Nickerson.



*Exhibits 4 & 5: The firearm on the defendant below his waist*

## RELEVANT PROCEDURAL HISTORY

On August 30, 2023, a federal grand jury returned an indictment charging the defendant with a violation of 18 U.S.C. § 922(g)(1). (ECF No. 12). On January 17, 2025, the defendant filed the instant motion to suppress. (ECF No. 57). The government now submits this Memorandum in Opposition.

## LEGAL STANDARDS

I. *Right to an Evidentiary Hearing*

"Hearings on motions to suppress are not discovery proceedings, but are instead designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought." *United States v. Harrelson*, 705 F.2d 733, 738 (5th Cir. 1983). For more than fifty years, the law in this Circuit has been that "[a] defendant is entitled to an evidentiary hearing

on his motion to suppress '*only* upon factual allegations which, if established, would warrant relief.'" *United States v. Law*, 528 F.3d 888, 903–04 (D.C. Cir. 2008) (quoting *United States v. Thornton*, 454 F.2d 957, 967 n.65 (D.C. Cir. 1971) (emphasis added)). "Evidentiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question, an evidentiary hearing is required." *United States v. Ledesma*, 499 F.2d 36, 39 (9th Cir. 1974). While the government ultimately bears the burden of proof at such a hearing, the defendant bears the initial "burden of showing that there were disputed issues of material fact necessitating an evidentiary hearing." *United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988). "And allegations which are merely conclusory or conjectural do not suffice for this purpose." *Thornton*, 454 F.2d at 967. Courts should refuse to hold evidentiary hearings where a defendant fails to meet this burden. *See, e.g.*, *Rollins*, 862 F.2d at 1291 (affirming district court's refusal to hold evidentiary hearing where neither of the defendant's "motions to suppress contained any statement of the facts surrounding his arrest, cited any authority supporting his fourth amendment argument, or were supported by affidavits or other evidence").

## II.    *Fourth Amendment Principles*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Fourth Amendment requires that "all seizures, even ones involving 'only a brief detention short of traditional arrest,' be founded upon reasonable, objective justification." *United States v. Gross*, 784 F.3d 784, 786 (D.C. Cir. 2015) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).

"Probable cause exists if a reasonable and prudent police officer would conclude from the totality of the circumstances that a crime has been or is being committed." *United States v. Holder*, 990 F.3d 1327, 1328 (D.C. Cir. 1993). "In assessing probable cause, as the Supreme Court has declared, '"the evidence . . . collected must be seen and weighed not in terms of analysis by scholars, but as understood by those versed in the field of law enforcement."'" *United States v. Laws*, 808 F.2d 92, 103-04 (D.C. Cir. 1986) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983) (quoting in turn *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

"[A]n officer may briefly detain a citizen if he has reasonable, articulable suspicion that 'criminal activity may be afoot.'" *United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 1923 (2000). As with probable cause, courts look to the totality of the circumstances. *See Edmonds*, 240 F.3d at 59 ("An officer on the beat does not encounter discrete, hermetically sealed facts. Rather, as we repeatedly have cautioned, the question of whether reasonable suspicion existed can only be answered by considering the totality of the circumstances as the officer on the scene experienced them.").

### III. *Fifth Amendment Principles*

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. To safeguard that right, a suspect must be adequately and effectively apprised of his right not to answer questions during an in-custody interview. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). *Miranda* requires that suspects in police custody be advised of their rights before they are subjected to interrogation, and that any

6

statement be the product of a knowing, intelligent, and voluntary waiver of those rights. Absent such a waiver, the statements resulting from a custodial interrogation may be suppressed. *See*, *e.g.*, *United States v. Patane*, 542 U.S. 630, 641-42 (2004) ("The exclusion of unwarned statements ... is a complete and sufficient remedy for any perceived *Miranda* violation." (internal citations and quotations omitted)). *Miranda* is inapplicable where (1) a suspect is in custody, but volunteers a statement in the absence of interrogation, *see*, *e.g.*, *Miranda*, 384 U.S. at 478; *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980); or (2) a suspect is questioned by the police but is not in custody at the time. *Beckwith v. United States*, 425 U.S. 341, 348 (1976). In short, *Miranda* warnings are only required where a suspect is both (1) in custody; and (2) subject to interrogation. *United States v. Vinton*, 594 F.3d 14, 26-27 (D.C. Cir. 2010). In addition, there is a "narrow exception" to the requirement of *Miranda* warnings in "a situation in which police officers ask questions reasonably prompted by a concern for the public safety," or to protect the safety of the officers. *New York v. Quarles,* 467 U.S. 649, 658-59 (1984). In those instances, "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 657.

A defendant is in custody when he is under arrest or subject to restraint of his movement of the same degree associated with a formal arrest. *See California v. Beheler*, 463 U.S. 1121, 1125 (1983) ("[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."). In determining whether a defendant is in custody, courts look at the totality of the circumstances, including "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012). "Custody" is determined objectively:

would a reasonable person have understood his situation to be comparable to a formal arrest." *United States v. Gaston*, 357 F.3d 77, 82 (D.C. Cir. 2004) (citing *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984)).

A defendant is subject to interrogation when he is expressly questioned by law enforcement or subject to its functional equivalent. *See Innis,* 446 U.S. at 300-01. Interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. Interrogation does not include statements or actions by law enforcement that do not invite or suggest a response from a defendant. *Id.* at 300-02 (concluding that there was no interrogation when two officers were talking to each other "to which no response from the respondent was invited."). "Volunteered statements of any kind are not barred by the Fifth Amendment" and "any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda*, 384 U.S. at 478.

The "public safety exception" articulated in *Quarles* as an exception to *Miranda* requirements is applied using a totality-of-the-circumstances analysis. *United States v. Jones*, 567 F.3d 712 (D.C. Cir. 2009); *see also United States v. Brown*, 449 F.3d 154, 159 (D.C. Cir.), *on reconsideration*, 463 F.3d 1 (D.C. Cir. 2006), *abrogated in part on other grounds by Dean v. United States*, 556 U.S. 568, 129 S. Ct. 1849, 173 L. Ed. 2d 785 (2009). In *Jones*, the D.C. Circuit discussed, "[w]ithout necessarily endorsing them," factors that other Circuits have emphasized when finding the public safety exception applies, including: (1) the defendant's prior criminal record; (2) the defendant's drug dealing; (3) the fact that the defendant was not yet handcuffed; and (4) the dangerous nature of the neighborhood where the defendant was arrested. *Id.* at 715-16.

8

These factors have been adopted by Courts in this District. *See, e.g., United States v. Redrick*, 48 F. Supp. 3d 91, 102 (D.D.C. 2014).

## ARGUMENT

### I. THE DEFENDANT'S MOTION SHOULD BE DENIED WITHOUT A HEARING

As a threshold matter, this Court should deny the defendant's motion without a hearing as there are no material facts in dispute as to either his Fourth or Fifth Amendment arguments. Additionally, this Court should deny the defendant's motion without prejudice to his refiling a revised motion as to his claims of Fifth Amendment *Miranda* violations in which he sufficiently articulates factual allegations and precedent supporting his position.

The defendant asserts—unsupported by any facts or law—that "[o]fficers unlawfully searched and seized Mr. Plummer" (ECF No. 57 at 4). Citing *Terry* and *Gross* for the basic premise that defendant was stopped and seized when the police surrounded and detained him, he concedes that "[t]he officers allegedly observed Mr. Plummer drop a gun and pick it up *prior* to the seizure but the government proffers no evidence supporting the assertion that Mr. Plummer was dangerous." *Id*. (emphasis added). The government agrees—once the officers saw a gun fall out of defendant's pants, which supported a determination by the officers that he was dangerous, they immediately stopped the defendant and conducted a protective patdown as they were more than justified in doing under the strictures of *Terry* and *Gross*.

The defendant's only remaining Fourth Amendment argument is that officers unlawfully "squeez[ed] an object in Mr. Plummer's pants, an action explicitly disallowed in *Dickerson* given the circumstances." (ECF No. 57 at 5) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). Here too, the government agrees with the defendant's factual statement that the officers squeezed

9

an object in the defendant's pants, and there is no factual dispute between the parties. Rather, as discussed below, it is the defendant's misapplication of *Dickerson* that is at issue.

Thus, the defendant has failed to identify any disputed issue of material fact necessitating a hearing on either of his claimed Fourth *or* Fifth Amendment violations. Indeed, his allegation regarding a *Miranda* violation consists of a single sentence. (ECF No. 57 at 5). As Judge Kelly explained in *United States v. Nettles*, the bare bones facts in defendant's motion here do not warrant a hearing. *See* 24-cr-361 (TJK) (ECF No. 26 at 2) ("[A] defendant's recitation of the definition of probable cause and bald allegation that the police did not have probable cause to arrest him is the sort of conclusory allegation that will not support suppression or require an evidentiary hearing."). The Court should deny the defendant's motion as to his Fifth Amendment claim without prejudice to his refiling a motion with the "required 'definite, specific, detailed, and nonconjectural' statement of facts that is a prerequisite for an evidentiary hearing," *Rollins*, 862 F.2d at 1291, and with adequately developed arguments that are supported by authority. Moreover, where the defendant has failed to establish any disputed material fact, the Court should deny his request for a hearing.

## II. OFFICERS HAD REASONABLE, ARTICULABLE SUSPICION TO STOP AND FRISK THE DEFENDANT.

The defendant's seizure here was based on reasonable, articulable suspicion that he had a firearm. Officers saw the defendant get out of his car, saw a firearm drop to the ground at his feet, and then saw the defendant pick that firearm up and conceal it inside his pants, providing the officer with ample evidence that he was armed and dangerous. It was only at that point that they detained the defendant.

Once the defendant was stopped, Officer Thomas's protective patdown—which was focused on the area where officers had observed the defendant placing a firearm—was permissible because he had "a 'reasonable fear for his own and others' safety' based on an articulable suspicion that the [defendant was] armed and dangerous." *United States v. Christian*, 187 F.3d 663, 668 (D.C. Cir. 1999) (quoting *Terry* 392 U.S. at 30); *see also Terry*, 392 U.S. at 24 ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."); *United States v. Green*, 465 F.2d 620, 623-24 (D.C. Cir. 1972) ("An officer 'need not defer protective measures to the point of peril. All the law requires is that he have reasonable basis for believing that his safety or the safety of others requires a search or seizure.'" (quoting *Young v. United States*, 435 F.2d 405, 409 (D.C. Cir. 1970)).

Moreover, contrary to the defendant's contention, the officers' patdown was within the scope of *Terry*. Citing *Dickerson*, the defendant argues that it was unlawful for the officers to squeeze an object in the defendant's pants during the patdown. (ECF No. 57 at 5). His reliance on

11

*Dickerson*, however, is misplaced. In *Dickerson*, the officer, who suspected the defendant was in possession of narcotics, patted down the defendant, but found no weapons. The officer, however, "felt a lump, a small lump, in the front pocket" and "examined it" with his fingers. 508 U.S. at 341. The Court held that the officer "overstepped the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*." *Id.* at 378. "[T]he officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to 'the sole justification of the search [under *Terry:*]. . . the protection of the police officer and others nearby." *Id.* (quoting *Terry*, 392 U.S. at 26).

In contrast, the officers in this case had not "concluded that [defendant's pants] contained no weapon," but exactly the opposite. Investigator Nunez *saw* the defendant drop the firearm and place it in his pants. Seconds later, while defendant remained in view, officers approached the defendant and specifically and intentionally patted down his pants, where they just had seen the defendant place the weapon. *See* Exhibit 3, at 11:05:28-30. The officers did not look in the car or begin their patdown around the defendant's upper body. Rather, as the defendant himself conceded, "Officer Kirkland repeatedly patdown Mr. Plummer's pants, lifted his shirt, and reached into his compression shorts, underneath Mr. Plummer's pants, and pulled out a handgun." (ECF No. 57 at 4). In other words, the officers focused their patdown on the same area where they observed the defendant place the firearm. Accordingly, the officers had reasonable, articulable suspicion to believe that the defendant's pants contained a firearm, they limited their search of the defendant to the area where they observed him place the firearm, and *Dickerson* does not apply. In sum, the police had ample reasonable suspicion to believe that the defendant was armed and were justified in detaining and patting-down the defendant, and their patdown did not exceed the bounds of the law.

### III. THE DEFENDANT'S ALLEGATION THAT HIS STATEMENTS WERE UNLAWFULLY ELICITED IS WITHOUT MERIT.

In his motion to suppress, the defendant does not identify any particular statement that he is moving to suppress. Rather, in a single sentence, he moves to suppress all statements that the defendant made after the officers stopped him.

The government does not dispute that, at the time police questioned the defendant about the location of the firearm in his pants, the defendant's movement was curtailed to the extent consistent with formal arrest and that he and had not received *Miranda* warnings. However, the defendant's statements are not subject to suppression because the public safety exception to *Miranda* applies. *See Quarles,* 467 U.S. at 658-59 ("police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect."). The Court may, but is not required to, look to certain factors in determining whether the public safety exception is applicable, including but not limited to (1) the defendant's prior criminal record, (2) the defendant's drug dealing, (3) the fact that the defendant was not yet handcuffed, and (4) the dangerous nature of the neighborhood where the defendant was arrested. *Jones*, 567 F.3d at 715-16.

While officers may not have been aware of the defendant's prior murder conviction at the time of the stop, the circumstances of this incident well satisfies the public safety exception. Investigator Nunez *saw a gun fall out of his pants onto the ground*, and then watched the defendant pick-up that gun and then conceal it in his pants. Moreover, during the patdown, officers felt a hard object consistent with a firearm in the defendant's pants. It was therefore more than reasonable for Investigator Nunez to conclude he was dealing with a firearm and take caution in

its recovery. Moreover, where the defendant was wearing at least two different layers of clothing – his outer shorts and compression shorts underneath – it was not immediately obvious where the firearm was secured on the defendant's person. It was under these circumstances that Investigator specifically asked, "Sir, for your safety, for my safety, I don't want to grab this weapon the wrong way. It's inside the pants?" The point of this question was not to elicit an incriminating response. Rather, there was an "ongoing threat to the safety of the officers or other persons" and Inspector Nunez was taking steps to avoid accidentally discharging the firearm and causing harm to the defendant, himself, his fellow officers, or any nearby civilians.

This also occurred in a dangerous area. Within a one-year period of when the defendant was arrested, two homicides, numerous assaults with dangerous weapons, auto thefts, robberies and other violent crimes had occurred within a 1,000-foot radius of where officers stopped the defendant.



*Figure 1: Exhibit 6 showing crime during the one-year period before the defendant was arrested in the 3500 block of 18th Street SE.*

The officers' actions here were thorough, careful, and well within the bounds of the public safety exception as defined in *Quarles* and as applied in this Circuit. *Redrick*, 48 F. Supp. 3d at 103. No *Miranda* violation occurred, and the defendant's motion should be denied without a hearing. Finally, the defendant makes a one-sentence assertion that his statements were the result

of an illegal search and must be suppressed under the fruit of the poisonous tree doctrine established in *Wong Sun v. United States*, 371 U.S. 471 (1963). (ECF No. 57 at 5). Because the stop and search were the result of reasonable articulable suspicion, as discussed above, this argument is meritless.

## CONCLUSION

For the foregoing reasons, this Court should deny the defendant's motion on the merits and without a hearing. In the alternative, this Court should deny the motion without prejudice to his refiling a motion that sufficiently articulates the factual and legal bases for his Fifth Amendment claims.

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar No. 481866

Dated: February 7, 2025     By:     */s/ Rachel Craft*
Rachel Craft
N.Y. Bar No. 5613708
Special Assistant United States Attorney
Jared English
D.C. Bar No. 1023926
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
601 D Street NW
Washington, D.C. 20530
(202) 468-0073 (Craft)
(202) 465-0089 (English)
Rachel.Craft2@usdoj.gov
Jared.English@usdoj.gov